■ In the Matter of BELLE HARBOR REALTY CORP., Appellant, v. ANDREW P. KERR, as Administrator of the Housing and Development Administration, et al., Respondents.— In a proceeding pursuant to article 78 of the CPLR *inter alia* to compel respondents to issue all necessary building approvals and permits regarding petitioner's construction of a proprietary home for adults, petitioner appeals from a judgment of the Supreme Court, Queens County, dated May 10, 1973, which dismissed the petition. Judgment reversed, on the law, without costs, and respondents are directed to issue the approvals and permits in question. Respondents revoked a previously granted approval of petitioner's plans to construct a nursing home in an area zoned to permit such an enterprise, on the ground that the sewers in the area were totally inadequate. Statistics showed a consistent increase in the number of complaints about sewer-backups resulting in overflow of sewage into the streets since 1969. Complaints of backups for 1972 on the street in question were more than double the number received in 1971. Respondents had initially approved petitioner's application for the appropriate building approvals on September 25, 1972. Before petitioner applied for the necessary permits pursuant to that approval, a suit was brought by an area resident to enjoin respondents from issuing the permits. Respondents moved to dismiss that action on the ground that, since petitioners in the instant action had met all building and zoning requirements, respondents had the right and the duty to issue the necessary permits. Respondents' motion was granted. Shortly thereafter, however, respondents notified petitioner that the prior approval was being revoked on the basis of a report prepared by respondents which indicated that the sewer system in the area, built before 1889, was " grossly inadequate " for current neighborhood needs and that addition of even one-family residences to the area would

sharply increase the occurrence of sewage backups. Respondents indicated that plans were being made to consider a new sewer system for the area and that two other previously issued approvals had also been revoked because of inadequacy of the sewer system. There was no indication in that notice of when, if ever, the improvement plans would be finalized and construction of a new sewer system undertaken. The judgment appealed from must be reversed and the approvals and permits ordered to issue, since respondents do not dispute that appellant has met all requirements for their issuance. Refusal to issue the approval and permits under these circumstances would constitute a deprivation of property without due process of law. "It is * * * impermissible to single out this plaintiff to bear a heavy financial burden because of a general condition in the community" (*Westwood Forest Estates* v. *Village of South Nyack*, 23 N Y 2d 424, 427). Unlike the situation in *Matter of ꞌGolden* v. *Planning Bd. of Town of Ramapo* (30 N Y 2d 359, 369), the lack of facilities here had no relation to any community plan; nor does it appear that there are any comprehensive plans for the improvement of the sewer system in the area to accommodate the structures for which it is zoned. The respondent city asks us to sanction a denial of approvals and permits because it has failed to provide adequate sewerage. It is not disputed that appellant's proposed structure is very similar to many of the other structures in the area. It is not disputed that the city is so remiss in building adequate sewerage that absolutely nothing can be built on this plot without creating a crisis in the sewage conditions. We cannot permit the city to punish a single landowner, or a few landowners, for its own failings. Accordingly, we must order the issuance of the permits and approvals. However, as in *Westwood Forest Estates* (*supra*), it should be made very clear that the city is not entirely without remedies. We cannot permit appellant to contribute to a situation which would subject the residents of Belle Harbor to unlimited dangers to health and safety, in the form of accumulating filth and sewage. To paraphrase language from the *Westwood Forest Estates* case (pp. 428–429) : " This is not to say that [the city] may not, pursuant to its other and general police powers, impose other restrictions or conditions on the granting of a building permit * * * or perhaps even a moratorium on the issuance of any building permits, reasonably limited as to time ". Such restraint must be imposed only as necessary. It may not " prevent permanently the reasonable use of private property " (p. 429). Accordingly, while we are reversing the judgment and ordering the issuance of the subject approvals and permits, we suggest that the city may impose a reasonable moratorium on construction in the area until the sewers can be expanded to accommodate the area's needs. However, if the city does choose to impose a moratorium, but then fails to remedy the sewerage problem with dispatch, property owners could, if so advised, sue to compel such remedial action, as well as for any damages which might have resulted from the city's failure to perform its duty. Munder, Martuscello and Latham, JJ., concur; Rabin, P. J., and Hopkins, J., dissent and vote to affirm.